# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

NANCY VITOLO,                                      )      NO. CV 09-07728 DSF (PJWx)
                                                   )
           Plaintiff,               )
                                                   )
                                                   )      **ORDER DENYING PLAINTIFF'S**
                                                   )      **MOTION FOR CLASS**
    v.                                  )      **CERTIFICATION AND DISMISSING**
                                                   )      **CLASS CLAIM**
BLOOMINGDALE'S, INC.,                              )      [Docket No. 72.]
                                                   )
                                                   )
           Defendant.               )
                                                   )

      Though Plaintiff Nancy Vitolo's Second Amended Complaint alleges nine wage and hour related claims, she seeks certification of a class as to only one:[1]

      Late Commission Final Pay Class: "all individuals who were employed as non-exempt commissioned sales associates at store locations within California and whose employment ended at any time between February 3, 2008 until class certification," for statutory damages pursuant to [California Labor Code] [§§] 201 and 202.

---

[1] Plaintiff's Reply exceeds the ample page limit established in the Court's Standing Order. Though the Court considers the Reply in its entirety, counsel are cautioned that further violations of the Court's orders may result in sanctions.

(Pl.'s Am. Not. Mot. 1.)

For the following reasons, Plaintiff's Motion is **DENIED.**

I.      FACTUAL BACKGROUND

Defendant operates nine retail department stores in California where it "employed Plaintiff and other persons in non-exempt positions." (SAC ¶ 20.) Specifically, Plaintiff was a commissioned employee "from July 26, 2008 to September 10, 2008." (Vitolo Decl. ¶ 2.) Commissioned employees are paid on a weekly basis.[2] (Gandia Decl. ¶ 8.)

Plaintiff states that "[she] spoke to the Human Resources department and informed Bloomingdale's, Inc. that [her] final day of work at Bloomingdale's, Inc. would be September 10, 2008.  [Plaintiff's] last day of work was September 10, 2008."[3] (Vitolo Decl. ¶ 8.)  Plaintiff contends that she provided Defendant's Human Resources department with a copy of her resignation letter, and that "[o]n September 19, 2008, Bloomindale's, Inc. directly deposited . . . $312.36 for [her] final wages and commissions [she] earned."[4]  (Vitolo Decl. ¶¶ 8, 9.)  Plaintiff asserts that her final payment was

_____

[2] Gandia explains: "The sales week runs from Sunday through Saturday.  The sales audit team generally completes their audit process on the Wednesday following the end of each sales week." (Gandia Decl. ¶ 11.)

[3] Plaintiff states: "I resigned on the 10th.  And I wasn't - - I wasn't coming back because, like I just mentioned to you, I had a new position on that Monday." (Vitolo Dep. 266:14-17, February 17, 2010.)

[4] Defendant alleges that "[Plaintiff's] resignation letter was never properly delivered, she called the store on September 13 to let the store know she would not work her scheduled shift that day, she failed to show up to work on September 14, and was, in accordance with Bloomingdale's standard procedures, deemed to have 'quit without notice' effective September 16." (Def.'s Opp'n 18.)  At this stage of the proceedings, the Court must accept the factual allegations in the complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901, n.17 (9th Cir. 1975).  Nevertheless, the Court is "at liberty" to look "behind the pleadings to issues overlapping with the merits of the underlying claims." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010).  At this stage, the Court declines to address Defendant's alternative theories of when Plaintiff resigned.

1  "mailed to [her]," (Vitolo Dep. 269:18), and that a wage statement reflecting earned

2  commissions was issued on October 17, 2008.  (Vitolo Decl. ¶ 10.)

3      Plaintiff claims that Defendant failed to comply with the California Labor Code,

4  which provides that all earned and unpaid wages must be paid on the last day of work, or

5  72 hours thereafter, depending on the circumstances of the employee's departure.  (SAC

6  ¶¶ 90-95.)  *See* Cal. Labor Code §§ 201, 202; *Pineda v. Bank of Am.*, 2010 Cal. LEXIS

7  11678, at *1, 2 (Cal. Nov. 18, 2010) ("When an employee is terminated or resigns from

8  his or her employment, final wages are generally due and payable immediately.").

9      Paul Russell Phillips, Bloomingdale's Regional Director of Human Resources for

10  its California stores, states that "the standard rule of thumb for all Bloomingdale's

11  locations in the state of California is that all employees are due all wages, inclusive of

12  paid time off and compensatory time, on their final day of work."  (Phillips Dep. 111:19-

13  22, Aug. 11, 2010.)  Phillips asserts: "All hours worked leading up to [departing

14  employees'] final day would be paid out on their last day of employment."  (Phillips Dep.

15  124:15-16), but "[c]ommissions are earned at the time that they are calculated . . . not at

16  the time that the transaction is completed."  (Phillips Dep. 152:12-16; *see also* Gandia

17  Decl.[5] ¶ 9.)  Plaintiff cites to Defendant's "Understanding Commission" booklet, which

18  indicates that commissions "are paid after they are calculated and processed pursuant to

19  the normal one week lag."  (Pl.'s Reply 3-4; Estrella Decl., Exs. H, I ("The commission

20  calculation period runs from Sunday through Saturday.  *Commissions are calculated on*

21  *net sales and paid on a lag*." (emphasis added)).)  Indeed, Defendant concedes that

22  commission earnings are subject to a "one week delay," and so "are never calculated on

23

24

25

26      [5]  Gandia has been employed by Defendant for thirty years and is currently employed as the
Human Resources Information Systems Coordinator for Bloomingdale's.  (Gandia Decl. ¶¶ 2, 3.)

27  Gandia's "specialty is commissions.  In particular, [he is] responsible for monitoring the commission
system . . . and the process of producing employees' commission statements for all Bloomingdale's

28  employees nationwide."  (Gandia Decl. ¶ 3.)

1   the day that somebody resigns or quits."[6]  (Phillips Dep. 113:22-25, 114:10-17.)
2   According to Plaintiff, because departing employees receive commission earnings after
3   at least a one-week delay, Defendant violated §§ 201-203 of the California Labor Code,
4   to which the Court now turns.

5         C.   <u>California's Final Pay Requirements</u>

6        "The California Labor Code contains certain final pay requirements prescribing the
7   type of compensation due employees at the end of the employment, as well as the manner
8   and form in which the final payments must be delivered to the employee."  *In re Wal-*
9   *Mart Stores, Inc. Wage and Hour Litig.* (*Wal-Mart Stores*), 2008 U.S. Dist. LEXIS
10  14756, *8, 9 (N.D. Cal. Feb. 13, 2008).  If an employee is discharged, "wages earned and
11  unpaid at the time of discharge are due and payable immediately."  Cal. Labor Code
12  § 201.  If an employee quits, wages are "due and payable not later than 72 hours
13  thereafter, unless the employee has given 72 hours previous notice," in which case wages
14  are due at the time of quitting.  Cal. Labor Code § 202.  "Every employee who is
15  discharged shall be paid at the place of discharge, and every employee who quits shall be
16  paid at the office or agency of the employer in the county where the employee has been
17  performing labor."  Cal. Labor Code § 208.  "The employer has a statutory obligation to
18  tender or deliver final pay."  *Wal-Mart Stores,* 2008 U.S. Dist. LEXIS 14756, *9.
19  Finally, California Labor Code § 203 provides:

20          If an employer willfully fails to pay, without abatement or
21          reduction, in accordance with §§ 201 [and . . .] 202 . . . , any
22          wages of an employee who is discharged or who quits, the
23          wages of the employee shall continue as a penalty from the due
24          date thereof at the same rate until paid or until an action

25

26  _____

27      [6] Phillips later states: "I'm going to say it's a two-pay period lag.  From the week in which you
worked, the next - - not the next pay period but the following pay period is when you would receive
28  your commissioned sales earnings."  (Phillips Dep. 205:15-18.)

4

therefore is commenced; but the wages shall not continue for
more than 30 days . . . .

II.   DISCUSSION

As a threshold matter, Plaintiff must demonstrate that she has standing to
pursue the class claim. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022
(9th Cir. 2003) (internal citations omitted) ("[I]f none of the named plaintiffs purporting
to represent a class establishes the requisite of a case or controversy with the defendants,
none may seek relief on behalf of himself or any other member of the class.").
"[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the
court need never reach the class action issue." *Id.* (internal citation omitted); *see Pence
v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978) ("[I]n class actions, the named
representatives 'must allege and show that they personally have been injured, not that
injury has been suffered by other, unidentified members of the class to which they belong
and which they purport to represent.'"); *see also Sanford v. MemberWorks, Inc.*, --- F.3d -
--, 2010 WL 4158602, *6 (9th Cir. Oct. 25, 2010). Stated another way, if Plaintiff has no
claim against Defendant for late payment of wages in violation of the California Labor
Code, "she cannot represent others who may have such a claim, and her bid to serve as a
class representative must fail." *Lierboe*, 350 F.3d at 1022.

As mentioned above, the Court accepts that Plaintiff quit her employment without
prior notice on September 10, 2008. She alleges that she did not receive her final
payment until several weeks later. (Vitolo Dep. 265:7-12.) Plaintiff concedes that she
did not return to the store to claim her final paycheck within 72 hours after her
resignation because "[n]o one told [her] that it was available." (Vitolo Dep. 267:20-24.)
Defendant asserts, and Plaintiff does not contest, that Plaintiff never discussed tender of
her final pay, never left instructions for the mailing of her final pay, and never returned to
the store to accept tender of her final pay. (Vitolo Dep. 267:20 - 269:13, 270:5-16.)

1    Consequently, Defendant argues that Plaintiff lacks standing because § 202

2    provides Plaintiff only with a right to return to the store and demand payment within

3    72 hours, and so Plaintiff "failed to discharge her duty [when she failed] to return to the

4    store to accept tender of her final pay."  (Def.'s Opp'n 8.)  In other words, Defendant

5    argues that because Plaintiff never sought her final payment and never requested an

6    alternative means of payment pursuant to §§ 202 and 208, she cannot allege an injury.

7    The Court agrees.  In *Moreno v. Autozone*, the district court concluded that a similarly

8    situated plaintiff suffered no injury because – even though her final check was not issued

9    within 72 hours of her resignation – "it had been issued by the time Plaintiff returned to

10   her workplace to claim it."  *Moreno v. Autozone, Inc*., 2009 U.S. Dist. LEXIS 94842, *2

11   (N.D. Cal. Oct. 9, 2009).  The court there found that the plain language of § 202 provides

12   that wages shall become due and payable not later than 72 hours after an individual quits

13   without notice, and that:

14         "Due and payable" implies that wages are owed from that point,

15         but do not clearly require that a check be issued and available.

16         On the contrary, this language suggests that a worker's right to

17         be paid vests after 72 hours, but that *it is the worker's*

18         *obligation to demand payment*.  Had the California legislature

19         sought to require employees to issue checks along a specific

20         time frame, regardless of the worker's action or preferences, it

21         would have used different language.  The definition of "due and

22         payable" does not clearly require the ministerial act of cutting a

23         check.

24   *Id*. at *7 (emphasis added).

25         Similarly, in *Wal-Mart Stores*, the district court concluded that "the California final

26   pay statutes . . . are triggered not only by termination of employment, but by the associate

27   performing his or her duty to be at the store to receive tender of final pay or to give [the

28   employer] specific mailing instructions."  *Wal-Mart Stores*, 2008 U.S. Dist. LEXIS

1    14756, at *24.  The court cited the opinion of the California Division of Labor Standards

2    ("DLSE"):

3               Labor Code section 208 further provides that the wages of an

4               employee who quits shall be paid at the office or agency of the

5               employer in the county where the employee has been

6               performing labor.  You are correct when you state that this

7               provision would require the quitting employee to return to the

8               office or agency where the employee has been performing labor

9               to collect his or her wages.  You are also correct in stating that

10              waiting time penalties would not accrue to an employee who

11              fails to return to the place of employment 72 hours after

12              quitting.

13   *Id*. at *24, 25.  Although DLSE opinions are not binding, they are instructive.  *Bell*

14   *v. Farmers Ins. Exch.*, 105 Cal. Rptr. 2d 59 (2001) (holding that these opinions, "[w]hile

15   not controlling upon the courts by reason of their authority, do constitute a body of

16   experience and informed judgment to which courts and litigants may properly resort for

17   guidance.").

18          Plaintiff's claim rests on the presumption that "commissions at Bloomingdale's are

19   paid on a one week delay *no matter what*," so that her final payment was necessarily

20   unavailable to claim 72 hours after her resignation.  (Pl.'s Reply 1.)  Thus, according to

21   Plaintiff, it is irrelevant whether she actually returned to the store 72 hours later to claim

22   her final payment because her commission earnings were necessarily subject to at least a

23   one-week delay.  Defendant concedes that commissioned earnings are subject to a one-

24   week delay.  However, standing requires that a plaintiff show an injury in fact.  Plaintiff

25   cannot do because she neither returned to the store to claim her final payment nor

26   requested an alternative means of payment.  Therefore, Plaintiff cannot assert that she

27   suffered an injury as a result of Defendant's allegedly unlawful conduct.

28

III.   <u>CONCLUSION</u>

Where, as here, the named plaintiff does not have standing, "the proper procedure . . . is to dismiss the complaint, not to deny the class for inadequate representation." *Moreno,* 2009 U.S. Dist. LEXIS, at *10; *see Lierboe,* 350 F.3d at 1023 (holding that where Plaintiff never was a member of the class she was named to represent, the case must be remanded with instructions to dismiss).  Because Plaintiff has eight other claims that she asserts individually, dismissal of the action is not appropriate.  Nor would it be appropriate to permit another purported class representative to join this action as a plaintiff to assert only the purported class claim.  Accordingly, the late commission payment claim is dismissed without prejudice to the filing of a separate putative class action by a different plaintiff.[7]

IT IS SO ORDERED.

Dated: December 7, 2010

DALE S. FISCHER
UNITED STATES DISTRICT JUDGE

---

[7] Even if the Court were to find that Plaintiff had standing, class certification would likely be denied for failure to meet the requirements of Federal Rule of Civil Procedure 23 for several of the reasons asserted by Defendant.  The Court declines to rule specifically on those issues because the putative class is not properly represented here.